1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK JOHNSON,                              No.  2:24-cv-02444-EFB (SS)

12              Plaintiff,

13        v.                                    ORDER

14   FRANK BISIGNANO,
     Commissioner of Social Security,[1]
15
                Defendant.
16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   denying his application for Social Security disability benefits under 42 U.S.C. § 405(g).  ECF No.

19   1.  Pending before the court are the parties' cross-motions for summary judgment.  ECF Nos. 12,

20   16.[2]  For the reasons provided below, plaintiff's motion for summary judgment is denied, and the

21   Commissioner's motion for summary judgment is granted.

22   ////

23   ////

24   ////

25   _____

          [1] Frank Bisignano is substituted as respondent pursuant to Federal Rule of Civil Procedure
26   25(d).

27          [2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all
     proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 6.
28

                                          1

1    **I.      Background**

2            In May 2017, plaintiff filed an application for disability insurance benefits under Title II

3    of the Social Security Act, alleging disability beginning on May 12, 2012.  Administrative Record

4    (AR) 168; *see* AR 441.[3]  Plaintiff alleged disability due to his hip replacement, post-traumatic

5    stress disorder (PTSD), and high blood pressure.  AR 189.  His application was denied on August

6    15, 2017, AR 96-99, and his request for reconsideration was denied in November 2017.  AR 101-

7    05.  He requested a hearing, which was held in August 2018, AR 35, and on October 9, 2018, the

8    ALJ issued a decision finding plaintiff not disabled.  AR 16-34.  Plaintiff sought review by the

9    Appeals Council, which was denied in August 2019, AR 1-4, and, on October 11, 2019, he

10   initiated an action in this court seeking reversal of the agency decision.  AR 526-31.  The district

11   court granted summary judgment in favor of the agency, in March 2021.  AR 513-25.  Plaintiff

12   then appealed the judgment and the Court of Appeal reversed on the grounds that the ALJ had

13   failed to address whether a letter submitted by plaintiff, authored by licensed clinical social

14   worker Linda Paoli, contained medical opinions.[4]  AR 495-507.  The Court of Appeals vacated

15   the district court's summary judgment order and remanded the matter to the agency on an open

16   record.  *Ibid*.

17           On remand, a hearing was held before an ALJ on February 22, 2024.  AR 463-94.  The

18   ALJ issued a written decision finding plaintiff not disabled on June 10, 2024.  AR 438-62.

19   Plaintiff filed the instant action challenging the agency decision in this court on September 8,

20   2024.[5]  ECF No. 1.

21                    [3] Defendant lodged the administrative record on October 31, 2024.  ECF No. 7.

22                    [4] As discussed infra, on remand, the ALJ concluded that Ms. Paoli's letter constituted a
23   medical opinion, AR 451-52, but rejected it as unsupported and inconsistent with the other
24   evidence.  AR 453

25                    [5] From the Administrative Record, it appears that plaintiff did not seek review to the
     Appeals Council prior to filing the instant action.  *See generally* AR.  Although a claimant
26   seeking review in federal court of an adverse ALJ decision in the first instance must exhaust his
     remedies by seeking Appeals Council review, 20 C.F.R. § 404.900; *see Sims v. Apfel*, 530 U.S.
27   103, 105 (2000), if a claimant is challenging the decision of an ALJ following remand from a
     federal district court, the claimant need not seek review in the Appeals Council again and the
28   decision of the ALJ is the final decision for the purposes of the federal court's review.  20 C.F.R.

                                                    2

1    **II.      Legal Standard**

2    **A.  The Disability Standard**

3          To qualify for disability insurance benefits under the Social Security Act, a claimant must

4    show he is unable "to engage in any substantial gainful activity by reason of any medically

5    determinable physical or mental impairment[6] which can be expected to result in death or which

6    has lasted or can be expected to last for a continuous period of not less than 12 months."  42

7    U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation

8    process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; *Batson v.*

9    *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential

10   evaluation in assessing whether the claimant is disabled are:

11          Step one: Is the claimant presently engaged in substantial gainful activity? If so,
12          the claimant is not disabled. If not, proceed to step two.

13          Step two: Is the claimant's alleged impairment sufficiently severe to limit his or
         her ability to work? If so, proceed to step three. If not, the claimant is not
14          disabled.

15          Step three: Does the claimant's impairment, or combination of impairments, meet
16          or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the
         claimant is disabled. If not, proceed to step four.

17          Step four: Does the claimant possess the residual functional capacity ("RFC") to
18          perform his or her past relevant work? If so, the claimant is not disabled. If not,
         proceed to step five.

19          Step five: Does the claimant's RFC, when considered with the claimant's age,
20          education, and work experience, allow him or her to adjust to other work that
         exists in significant numbers in the national economy? If so, the claimant is not
21          disabled. If not, the claimant is disabled.

22

23   ////

24

25   § 404.984(d).

26
       [6] A "physical or mental impairment" is one resulting from anatomical, physiological, or
27   psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory
     diagnostic techniques. 42 U.S.C. § 423(d)(3).

28

1   *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  At each of these five

2   steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical

3   testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).

4   (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  In steps one through four, the

5   burden of proof is on the claimant.  *Ford*, 950 F.3d at 1148.  A claimant establishes a prima facie

6   case of qualifying disability once he has carried the burden of proof from step one through step

7   four.  *Ibid*.

8         Before making the step four determination, the ALJ first must determine the claimant's

9   RFC.  *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still

10  do despite [his] limitations" and represents an assessment "based on all the relevant evidence."

11  20 C.F.R. § 404.1545(a)(1).  A determination of RFC is not a medical opinion, but a legal

12  decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(2) (RFC

13  is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for

14  determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the

15  responsibility of the ALJ, not the claimant's physician, to determine residual functional

16  capacity.").

17        At step five, the burden shifts to the Commissioner, who must then show that there are a

18  significant number of jobs in the national economy that the claimant can perform given his RFC,

19  age, education, and work experience.  20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194.  If the

20  claimant can perform other work in the national economy, then the claimant may not be found to

21  be disabled.  *Ibid.*

22        **B. Standard of Review**

23        Congress has provided that an individual may obtain judicial review of any final decision

24  of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).  In

25  determining whether to reverse an ALJ's decision, the court reviews only those issues raised by

26  the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

27  The court must find the Commissioner's decision conclusive if it is supported by substantial

28  evidence.  42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "Substantial evidence

is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

### III.    The ALJ's Findings of Fact and Conclusions of Law

In his June 10, 2024 decision, the ALJ found plaintiff not disabled and made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 12, 2012 through his date last insured of December 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: status-post right hip arthroplasty, obesity, depressive disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD") (20 CF 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally climb ramps and stairs and crawl. The claimant can never climb ladders or scaffolds. The claimant can frequently balance, stoop, kneel, and crouch. The claimant cannot work at unprotected heights. The claimant must avoid concentrated exposure to moving mechanical parts. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks using judgment limited to simple work-related decisions. The claimant can occasionally interact with coworkers and the public.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 18, 1957 and was 54 years old and an individual closely approaching advanced age as of the alleged onset date. The claimant subsequently changed age categories to both advanced age and closely approaching retirement age prior to the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 12, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

1     AR 443-56.

2        **IV.    Analysis**

3        Plaintiff raises four issues on review.  First, he argues that the ALJ's determination at step

4     three lacked substantial evidence insofar as the ALJ determined plaintiff did not meet the

5     paragraph C.2 criteria for listings 12.04, 12.06, and 12.15 of 20 C.F.R. Part 404, Subpart P,

6     Appendix 1.  ECF Nos. 12 at 5-11, 19 at 1-9.  Second, he argues that there is not substantial

7     evidence to support the RFC determination because the ALJ unreasonably relied on the opinions

8     of persons who had not examined plaintiff.  ECF Nos. 12 at 11-18, 19 at 9-13.  Third, plaintiff

9     argues that the RFC determination lacked substantial evidence because the ALJ unreasonably

10    discounted his testimony.  ECF Nos. 12 at 19-20, 19 at 13-14.  Finally, plaintiff argues that the

11    RFC determination was without substantial evidence due to the ALJ's unreasonable assessment

12    of the evidence provided by third-party witness Kelli Hoppe.  ECF Nos. 12 at 19-20, 19 at 15-16.

13    For the reasons set forth herein, none of plaintiff's arguments have merit.

14        **A. Step Three Determination**

15        Plaintiff first argues that the agency's decision should be reversed because the ALJ's

16    determination at step three lacked substantial evidence, insofar as the ALJ determined plaintiff

17    did not meet the paragraph C.2 criteria for listings 12.04, 12.06, and 12.15 of 20 C.F.R. Part 404,

18    Subpart P, Appendix 1.  ECF Nos. 12 at 5-11, 19 at 1-9.  The court concludes plaintiff has not

19    shown reversal is warranted.

20        At step three, the ALJ found that plaintiff did not have an impairment or combination of

21    impairments that meets or medically equals an impairment listed as severe in 20 CFR Part 404,

22    Subpart P, Appendix 1.  AR 444-47.  The ALJ observed that plaintiff's claimed mental

23    impairments implicated listings 12.04 (depressive disorder), 12.06 (anxiety disorder), and 12.15

24    (PTSD) of Appendix 1.  AR 444.  In order for the impairment to be found under each of these

25    listings, the claimant must meet two of three criteria set forth in paragraphs A, B, and C of the

26    listing; specifically, he must meet the criteria set forth in paragraphs A and B, or A and C.  *see* 20

27    C.F.R. § Pt. 404, Subpt. P, App. 1, 12.04, 12.06, 12.15.  The ALJ found that plaintiff did not meet

28    the criteria of paragraph B for any of these listings, AR 444-46; plaintiff does not challenge this

1  finding.  *See* ECF No. 12 at 5-11.  The ALJ also found that plaintiff did not meet the criteria

2  described paragraph C of any of these listings, AR 446-47, which requires a two-part showing:

3
       C. Your mental disorder in this listing category is "serious and persistent;" that is,
4      you have a medically documented history of the existence of the disorder over a
       period of at least 2 years, and there is evidence of both:
5
       1. Medical treatment, mental health therapy, psychosocial support(s), or a highly
6      structured setting(s) that is ongoing and that diminishes the symptoms and signs
       of your mental disorder (see 12.00G2b); and
7
       2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in
8      your environment or to demands that are not already part of your daily life (see
       12.00G2c).
9

10 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.15; *see also id.* 12.04, 12.06.  Plaintiff argues here that

11 the record did not provide substantial evidence for the ALJ's determination that part 2 of

12 paragraph C had not been shown for any of petitioner's mental impairments or the combination

13 thereof.

14         The record demonstrates substantial evidence for the ALJ's finding.  Under the

15 regulations, the criterion contained in paragraph C.2

16
       is satisfied when the evidence shows that, despite your diminished symptoms and
17     signs, you have achieved only marginal adjustment. "Marginal adjustment" means
       that your adaptation to the requirements of daily life is fragile; that is, you have
18     minimal capacity to adapt to changes in your environment or to demands that are
       not already part of your daily life. We will consider that you have achieved only
19     marginal adjustment when the evidence shows that changes or increased demands
       have led to exacerbation of your symptoms and signs and to deterioration in your
20     functioning; for example, you have become unable to function outside of your
       home or a more restrictive setting, without substantial psychosocial supports (see
21     12.00D). Such deterioration may have necessitated a significant change in
       medication or other treatment. Similarly, because of the nature of your mental
22     disorder, evidence may document episodes of deterioration that have required you
       to be hospitalized or absent from work, making it difficult for you to sustain work
23     activity over time.

24 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.G.2.c.  The ALJ found that, under this criterion,

25 plaintiff's functioning reflected greater than "marginal adjustment" based on a multiplicity of

26 items of evidence in the record.   Specifically, the ALJ first observed that plaintiff managed the

27 changes and unpredictabilities intrinsic to Alcoholics Anonymous meeting attendance, long-

28

distance travel, and occasional changes to his insurance provider, as well as expressed interest in pursuing new activities, including joining a gym. AR 446-47. The ALJ's description of the record in this regard was accurate. *See* AR 49-50 (plaintiff testifies about annual trips to visit his mother), 303-04 (treatment records memorializing plaintiff's plans to manage his insurance coverage), 360 (treatment records memorializing change in plaintiff's insurance coverage), 362 (treatment records memorializing plaintiff's report of having recently, in 2017, registered at a gym), 474-75 (plaintiff's hearing testimony describing Alcoholics Anonymous meeting attendance and having joined a gym), 780 (plaintiff's interrogatory response describing Alcoholics Anonymous meeting attendance during the relevant period), 970 (treatment records memorializing plaintiff's stated plan to go to a gym the next day).

Plaintiff argues that it was unreasonable for the ALJ to rely on these occurrences as evidence of his greater-than-marginal adjustment, because this evidence instead supports the inference that plaintiff needs structure and routine in order to function successfully. *See* ECF No. 12 at 6-9. Plaintiff also argues that, as a matter of logic, the regulations cannot be read to preclude a finding of disability based on a claimant's participation in mental health treatment and programs like Alcoholics Anonymous meetings. ECF No. 12 at 7-9. Although the record may support the deductions plaintiff urges, the deductions of the ALJ are also reasonable and "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Here, the regulations required the ALJ to consider the claimant's ability to manage various life activities and, specifically, to adapt to changes and novel circumstances. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.G.2.c. As such, it was not only reasonable but necessary for the ALJ to examine the evidence for instances of such novelties and infer, from the evidence before him, how plaintiff appeared to have managed those experiences. *See, e.g.*, *Scrum v. Comm'r*, No. CV-21-08240-PCT-DWL, 2022 WL 17688201, at *3 (D. Ariz. Dec. 15, 2022) (holding "it was rational for the ALJ to conclude that the highly restrictive criteria in listing 12.06(C) were not satisfied" based on evidence that claimant reported joining a gym, traveling for the weekend, engaging in personal care, handling finances, and preparing meals); *Craig N. v.*

1  *Saul*, No. 19-cv-05235-TSH, 2020 WL 4284845, at *22 (N.D. Cal. July 27, 2020) (evidence that

2  claimant lived alone for years with only minor support, without any evidence of exacerbation of

3  symptoms or deterioration in functioning due to changes, was "evidence of more than marginal

4  adjustment"); *Joshua M. v. Comm'r.*, No. 1:19-CV-05135-LRS, 2020 WL 13505053, at *9 (E.D.

5  Wash. Mar. 17, 2020) (claimant's "ability to remain independent in his daily functioning and his

6  pursuit of mental health treatment, which included medication and counseling, with reports of

7  improvement" supported ALJ's conclusion that Paragraph C2 was not met); *Smith v. Comm'r*,

8  No. 1:21-cv-00481-CDB (SS), 2024 WL 201052, at *6 (E.D. Cal. Jan. 18, 2024) (upholding

9  ALJ's finding that the criterion of paragraph C.2 was not met where claimant participated in

10 behavioral therapy, attended to his personal hygiene, and prepared simple meals) (*rev'd on other

11 grounds*); *Nicholle M. v. O'Malley*, No. 23-cv-05092-SK, 2024 WL 3550424, at *8 (N.D. Cal.

12 Mar. 6, 2024) (holding that evidence of claimant's travel "demonstrate[d] that [she] was able to

13 adapt to changes" within the meaning of paragraph C.2).  Moreover, in order for the ALJ to find

14 the paragraph C.2 criterion to have been satisfied, he would have had to have found not only that

15 plaintiff struggled to adapt to changes, but more specifically that there was evidence that

16 confrontation with novel circumstances caused an "exacerbation of [plaintiff's] symptoms and

17 signs and . . . deterioration in [his] functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1,

18 12.00.G.2.c.  Plaintiff points to no evidence on the record that impugns the ALJ's finding that the

19 record did not indicate such deterioration or exacerbation of plaintiff's symptoms and signs of

20 impairment when confronted with novel or unpredictable circumstances, *see generally* ECF No.

21 12 at 5-9, and the court's own review of the record reveals no such evidence either.

22      In addition to evidence of plaintiff's Alcoholics Anonymous meeting attendance, travel,

23 management of insurance coverage changes, and plans for future new circumstances, such as

24 joining a gym, the ALJ also considered that contemporaneous treatment notes indicated that

25 plaintiff was able to adapt to changes in his daily life.  AR 447 (citing AR 1011-1186).  Although

26 plaintiff argues broadly that the treatment records do not support such an inference, *see* ECF No.

27 12 at 9, the cited portion of plaintiff's medical records memorialize changes in treatment

28 modalities and medication regimens without indication that those events exacerbated plaintiff's

1   symptoms and signs of depressive disorder, anxiety disorder, or PTSD.  *See, e.g.*, AR 1013, 1016-

2   18, 1031, 1034, 1043; *see generally* AR 1011-1186.  It was, therefore, reasonable for the ALJ to

3   rely on these records as indication that plaintiff exhibited greater-than-marginal adjustment, i.e.,

4   did not meet the C.2 criterion.

5        Finally, the ALJ addressed in his C.2 analysis the opinions of Dr. Michael Smith and

6   clinician Brad Gilbert, both of which indicated their opinions that criterion C.2 was satisfied in

7   plaintiff's case.  AR 447.  The ALJ found neither opinion persuasive.  *Ibid*.  The ALJ gave no

8   weight to Dr. Smith's conclusion on this criterion, because his opinion was supported by little

9   narrative, was unsupported by his own treatment notes, and was inconsistent with the other

10  evidence of plaintiff's functioning, described above.  It is apt for an ALJ to consider such features

11  when evaluating and weighing the opinions of medical experts, even at the stage three analysis.

12  *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.C.1 (explaining that the agency

13  evaluates medical opinions using the standards set forth in §§ 404.1520c, 404.1527, 416.920c,

14  and 416.927); *see, e.g., Smith v. Comm'r of Soc. Sec*., No. 121CV00481CDBSS, 2024 WL

15  201052, at *6 (E.D. Cal. Jan. 18, 2024).  The record supports the ALJ's assessment of Dr. Smith's

16  opinion as supported by little narrative to justify its conclusion, *see* AR 319-20, which plaintiff

17  concedes.  *See* ECF No. 12 at 10.  The record also supports the ALJ's observations that Dr.

18  Smith's opinions that plaintiff "experienced repeated episodes of deterioration or decompensation

19  in situations which cause him . . . to withdraw from the situation or to experience an exacerbation

20  of signs or symptoms" and that "even a minimal increase in mental demands or change [would]

21  be predicted to cause [plaintiff] to decompensate," AR 320, were not substantiated by any of the

22  contemporaneous notes contained in his treatment records of plaintiff.  *See* AR 356-64.  Finally,

23  the ALJ was reasonable in considering the extent to which Dr. Smith's opinions were

24  contradicted by other evidence in the record when determining what, if any, weight to give his

25  opinions.  *See generally* 20 C.F.R. § 404.1520c(c)(2) (defining external consistency and

26  identifying it as one of the most important considerations in evaluating a medical opinion).

27       The ALJ's rejection of Mr. Gilbert's opinion that criterion C.2 was satisfied was also

28  reasonable given the totality of the record before the agency.  Mr. Gilbert opined that plaintiff

1   found "it difficult to adapt to any changes in his environment or in his life" and that "change is

2   overwhelming for" plaintiff.  AR 1188.  In support of this opinion, Mr. Gilbert briefly described

3   that plaintiff had lived in the same location for 33 years; relied on addiction mentors, friends, and

4   therapy sessions for structure; had not changed cars despite his becoming non-functional; and

5   struggled in relationships due to anxiety and paranoia.  AR 1188.  The ALJ was reasonable,

6   however, in observing that this supportive narrative lacked much detail, nor any supporting

7   treatment records, from which its accuracy could be discerned.  *See ibid*.  The ALJ also

8   reasonably discounted Mr. Gilbert's opinion for appearing inconsistent with other evidence in the

9   record, including plaintiff's self-reporting of his functioning.  In total, the record amply supports

10   the reasonability of the ALJ's discounting of Mr. Gilbert's opinion.  *See generally* 20 C.F.R. §

11   404.1520c(b)(2).

12         Accordingly, plaintiff has not shown that the ALJ's step three finding lacked substantial

13   evidence to support it.

14         **B.  Challenges to RFC Determination**

15         The remainder of plaintiff's challenges are to the ALJ's determination on remand of

16   plaintiff's RFC.  ECF No. 12 at 11-20.  Plaintiff argues that the ALJ was unreasonable in finding

17   certain medical opinions persuasive and others unpersuasive, and in the degree to which he

18   credited evidence provided by plaintiff and a third-party witness.  *Ibid*.  As a threshold matter,

19   plaintiff's challenges to the agency's RFC determination must fail because he makes no argument

20   as to how any of the asserted errors harmed him, i.e., in what way the RFC determination would

21   have differed, and been more favorable to a disability finding, had the ALJ not committed the

22   errors that plaintiff argues.  *See ibid.*; ECF No. 19 at 9-16.  This absence is fatal to plaintiff's

23   argument that remand is warranted, as a plaintiff challenging a denial of disability benefits must

24   demonstrate prejudice for any error.  *See Shinseki*, 556 U.S. at 409; *Molina v. Astrue*, 674 F.3d

25   1104, 1115 (9th Cir. 2012); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692

26   n.2 (9th Cir. 2009) (plaintiff "does not detail what other physical limitations follow from the

27   evidence of his knee and should injuries, besides the limitations already listed in the RFC. We

28   reject any invitation to find that the ALJ failed to account for [plaintiff's] injuries in some

12

1   unspecified way.").

2    Additionally, for the reasons set forth below, plaintiff fails to show that the RFC

3   determination was lacking substantial evidence so as to merit reversal.  *See generally* 42 U.S.C. §

4   405(g); *Biestek*, 587 U.S. at 99.  On this alternative basis, plaintiff's motion must be denied and

5   defendant's granted.

6      **1.  ALJ's Evaluation of Medical Opinion Evidence**

7    Plaintiff challenges the RFC as lacking substantial evidence because, per plaintiff, in

8   reaching conclusions about plaintiff's functioning the ALJ unreasonably relied on the opinions of

9   non-examining medical experts and unreasonably found unpersuasive the opinions of other

10  experts.  ECF No. 12 at 11-18.  Plaintiff's argument is meritless.

11    **a.  Dr. Tawnya Brode and Dr. Normal Zukowsky**

12   As part of the ALJ's RFC analysis, he found persuasive Dr. Brode's opinion that plaintiff

13  "was able to maintain appropriate behavior in a context of limited social demands and public

14  contact," and Dr. Zukowsky's opinion that plaintiff "could perform unskilled or entry-level work,

15  interact with coworkers and the public in brief encounters . . . while individual or isolative duties

16  were recommended without group, collaborative, or cooperative tasks."  AR 452.  The ALJ found

17  that both opinions were well-supported by respective reviews of the evidence and narratives.

18  *Ibid*. (citing AR 62-74, 76-90).  He also found that both opinions were consistent with extrinsic

19  evidence: the observations of Dr. Giannuli, plaintiff's presentation during the physical consultant

20  examination, plaintiff's self-reporting of his functioning, and his records demonstrating

21  conservative treatment for plaintiff's psychiatric impairments.  AR 452.  The ALJ observed that

22  Dr. Zukowsky's report contained an internal contradiction, in that it endorsed both that plaintiff

23  could interact with coworkers and the public in brief encounters and that plaintiff's contact with

24  the public was precluded and other contacts should be minimized.  *Ibid*.  Resolving this

25  discrepancy, the ALJ found the less restrictive opinion of Dr. Zukowsky to be more persuasive, as

26  it was both supported and consistent, for the reasons set forth above.  *Ibid*.

27   Plaintiff challenges the ALJ's analysis on several bases, none of which have merit.  First,

28  plaintiff repeatedly emphasizes that Drs. Brode and Zukowsky had not personally examined

plaintiff, suggesting that on this basis the ALJ was unreasonable for finding their opinions more persuasive than those of sources who had examined plaintiff.  The ALJ's approach in this regard was proper under governing regulations.  Under the revised regulations,[7] in making the RFC determination, the ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s). . . ."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specified factors.  *Id.* §§ 404.1520c(a), 416.920c(a).  Of these factors, the two most important, which the ALJ must discuss expressly in his opinion, are "supportability" and "consistency."  20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1).  An opinion is more "supportable," and thus more persuasive, when the source provides more relevant "objective medical evidence and supporting explanations" for their opinion.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Woods*, 32 F.4th 785 at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

The revised regulations still permit the ALJ to consider the source's relationship with the claimant and whether they have treated or examined them personally.  *Woods*, 32 F.4th 785 at 792.  Specifically, the regulations permit the ALJ to consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Ibid.* (citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v)).  Typically, although the ALJ may consider these "relationship factors,"

---

[7] The regulations regarding the evaluation of medical opinion evidence were amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867-68, 5878-79 (Jan. 18, 2017).  Because plaintiff filed his claim after that date, the new regulations apply.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

his opinion need not contain specific findings as to any of them.  *Ibid.* (citing 20 C.F.R. § 404.1520c(b)(2)).  If, however, the ALJ finds that the supportability and consistency factors to be essentially in equipoise for two or more medical opinions—i.e., that "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same," 20 C.F.R. § 404.1520c(b)(3)—the ALJ must articulate in his decision how he considered "the other most persuasive factors" beyond supportability and consistency.  *Id.*  These other factors include the relationship factors described above, *id.* § 404.1520c(c)(3), whether the medical source's opinion concerns "medical issues related to his or her area of specialty," *id.* § 404.1520c(c)(4), and any "other factors that tend to support or contradict [the] medical opinion," *id.* § 404.1520c(c)(5); *see Woods*, 32 F.4th at 792.

In light of these regulations, there was no error in the ALJ's overall analytical approach to assessing the persuasiveness of Drs. Brode's and Zukowsky's opinions.  Consistent with governing regulations, the ALJ articulated that he found both opinions persuasive because they were each supported and consistent.  AR 452.  Although he did not articulate any findings as to the relevance of any of the relationship factors to his analysis, he was not required to.  *See* 20 C.F.R. § 404.1520c(b); AR 452-54.  Moreover, the fact that the ALJ did not apparently treat Drs. Brode's and Zukowsky's opinions as intrinsically suspect because they did not examine plaintiff, as plaintiff appears to suggest the ALJ should have done, was correct under the regulations.  *See* 20 C.F.R. § 404.1520c(a); *Woods*, 32 F.4th at 791-92.

Also meritless is plaintiff's argument that the opinions of Drs. Brode and Zukowsky were not reliable because they were each premised on Drs. Brode's and Zukowsky's only minimal knowledge of plaintiff's functioning.  Plaintiff argues that both opinions were premised solely on clinician Paoli's two-page report and single page of notes, generated in 2017; and a 2017 report of Dr. Giannuli.  ECF No. 12 at 12.  The record does not support this.  Dr. Brode reported that she considered Ms. Paoli's and Dr. Giannuli's 2017 reports, as well as plaintiff's medical records from 2016 and 2017, including records of his treatment for and management of the relevant psychiatric conditions.  AR 63-70.  Dr. Zukowsky's opinion was reportedly premised on review of the same materials, as well as additional materials from Ms. Paoli and the Women's Center for

1    Youth and Family, which had been submitted in support of reconsideration.  AR 77-90.

2          Plaintiff also argues that Drs. Brode's and Zukowsky's opinions were necessarily less

3    reliable than those of other medical experts who rendered opinions after 2017, based on plaintiff's

4    treatment records spanning 2017 to 2024.  ECF No. 12 at 12-13.  This argument also fails to

5    persuade.  The narrow and specific question before the ALJ was whether plaintiff had shown he

6    was disabled between May 12, 2012, the date of claimed onset of disability, and December 31,

7    2017, the date he was last insured.  *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520; AR 168, 443-

8    44.  Although the regulations permit the agency to consider medical opinions generated after the

9    claimant's date last insured, *see Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), those

10   opinions are persuasive only insofar as they illuminate plaintiff's functioning before the date last

11   insured.  *See id.* at 1225-26; *see, e.g.*, *Dale v. Colvin*, 823 F.3d 941, 944 (9th Cir. 2016) (noting

12   that medical opinion given two years after date last insured was "only marginally relevant" to the

13   disability determination); *Grace E.F. v. Saul*, No. 2:18-cv-09905-AFM, 2019 WL 6135029, at *6

14   (C.D. Cal. Nov. 19, 2019) (finding records created more than over one year after date last insured

15   were irrelevant to plaintiff's DIB claim when nothing in them purported to concern her

16   limitations on or before date last insured); *Vaile v. Berryhill*, No. 5:16-cv-00393-GJS, 2017 WL

17   2785331, at *3 (C.D. Cal. June 27, 2017) (finding medical records and opinion from after period

18   of disability relevant because they related to treatment for conditions that existed during period of

19   disability); *see generally* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520.  Given the temporal period at

20   issue before the ALJ, it was reasonable for him to pay particular attention to the opinions

21   rendered, and evidence of plaintiff's functioning, during that period or shortly thereafter.  *Cf.*

22   *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (when "interpreting the

23   evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence'").

24         Moreover, the ALJ's reasons for crediting the opinions of Drs. Brode and Zukowsky were

25   supported by the record.  Consistent with the ALJ's opinion, both Drs. Brode's and Zukowsky's

26   opinions were supported with relevant, objective medical evidence.  AR 67-72, 77-88.  The

27   record also corroborates the ALJ's finding that Drs. Brode's and Zukowsky's opinions were

28   consistent with Dr. Giannuli's 2017 clinical observations of plaintiff's functioning, *see* AR 305-

1   18, and with plaintiff's treatment history.  *See* AR 307, 323-53, 360, 404, 812-1010, 1012-1185.

2   Despite plaintiff's characterization of his psychiatric treatment history as intensive, *see* ECF No.

3   12 at 13-14, the record supports the ALJ's perception that plaintiff had experienced only

4   "conservative treatment for . . . [his] psychiatric impairments," given that plaintiff's treatment in

5   the relevant period primarily consisted of outpatient therapy sessions and some management with

6   medication.  AR 452; *see, e.g.,* AR 307 (memorializing plaintiff's report to Dr. Giannuli in 2017

7   that he had not received treatment or medication for PTSD in 2.5 years), AR 323-53 (treatment

8   records indicating that from January through April, 2018, plaintiff was referred to individual

9   outpatient therapy and weekly aftercare groups for management of his major depression with

10   recurrent episodes of anxious distress), AR 360 (October 2017 treatment record memorializing

11   that plaintiff would begin dialectical behavioral therapy group for anger management in January

12   2018), AR 404 (May 2017 treatment record memorializing plaintiff's prescription for Paxil for

13   anxiety, depression, and PTSD), AR 818-19 (2018 treatment records indicating plaintiff referred

14   for group therapy and individual therapy for major depression), AR 827 (May 2018 treatment

15   record stating plaintiff engaged in AA once per week, group therapy once per week, and

16   individual therapy sessions), AR 1013-14 (2019 treatment records memorializing plaintiffs report

17   that he was not using psychotropic medication and that he was participating in weekly therapy);

18   *see McCaffrey v. Comm'r*, No. 2:16–cv–03055–KJN, 2018 WL 534037, at *10 (E.D. Cal Jan. 23,

19   2018) (characterizing counseling and psychiatric medications as "relatively conservative

20   treatment" for depression).   In sum, in light of the entirety of the record before the agency, there

21   was substantial evidence for the ALJ finding persuasive Drs. Brode's and Zukowsky's opinions

22   about the plaintiff's capacities when interacting with others resultant from his psychiatric

23   impairments.  *See generally Thomas*, 278 F.3d at 954.

24          **b.  Dr. M. Giannuli**

25          Plaintiff next takes issue with the ALJ's discussion of the medical opinion of Dr. M.

26   Giannuli.  ECF No. 12 at 15-16.   In a July 15, 2017 report, Dr. Giannuli opined that plaintiff,

27   was, inter alia, "mildly impaired" in his ability to work with coworkers and the public, to perform

28   work activities consistently without special or additional instructions, to maintain regular

1    attendance in the workplace, to complete a normal workweek without interruptions from mental

2    health symptoms, and to deal with the usual stresses of a workplace.  AR 310-11.  The ALJ

3    credited Dr. Giannuli's findings that plaintiff was impaired, but was "not persuaded by the

4    opinion of Dr. Giannuli that the claimant only had mild limitations."  AR 311.  The ALJ found

5    the opinion supported by Dr. Giannuli's own clinical observations of plaintiff, but inconsistent

6    with plaintiff's own reported limitations and his history of psychiatric treatment.  *Ibid*.

7         Plaintiff appears to claim error in the fact that the ALJ found Dr. Giannuli's opinion only

8    partially persuasive.  ECF No. 12 at 15.  There was nothing erroneous in this approach.  "It is not

9    necessary to agree with everything an expert witness says in order to hold that his testimony

10    contains 'substantial evidence.'"  *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) (citing

11    *Vincent v. Heckler,* 739 F.2d 1393 (9th Cir. 1984)).  Here, the ALJ credited Dr. Giannuli's

12    opinion that plaintiff was impaired in specific ways, based on the objective medical information

13    gleaned in Dr. Giannuli's examination of plaintiff.  AR 453 (citing AR 305-11).  The ALJ also

14    considered whether the extent of plaintiff's impairment was as Dr. Giannuli identified,

15    concluding that other evidence—viz., plaintiff's reports of his own functioning, AR 200-08, 776-

16    82, and treatment history, AR 810-1185—belied Dr. Giannuli's conclusion that plaintiff's

17    impairments were only mild.  This approach was not error, but rather reflects the ALJ undertaking

18    the very analysis the regulations require of him. 20 C.F.R. §§ 404.1520(e), 404.1520c(a),

19    404.1527(d)(2), 404.1545(a), 404.1546(c); 416.945(a); *see Tommasetti v. Astrue*, 533 F.3d 1035,

20    1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in

21    the medical evidence."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When

22    evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to

23    weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine

24    which reports to credit and which to reject."); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

25    2003) (where "the record contains conflicting medical evidence, the ALJ is charged with

26    determining credibility and resolving the conflict"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

27    F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and

28    "internal inconsistencies" within doctor's reports); *see generally Vertigan*, 260 F.3d at 1049 ("It

1    is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual

2    functional capacity.").  It therefore was not error for the ALJ to rely on those aspects of Dr.

3    Giannuli's report the ALJ found persuasive when he evaluated the consistency factor of other

4    medical opinions.  *See* ECF No. 12 at 15.

5        Moreover, to the extent plaintiff argues that the ALJ's partial rejection of Dr. Giannuli's

6    report was error, plaintiff's failure to make an argument addressing prejudice, as discussed above,

7    is especially fatal to this subclaim in particular, given that the ALJ largely credited Dr. Giannuli's

8    clinical opinion, only deviating from Dr. Giannuli by finding plaintiff more limited in his

9    functioning than Dr. Giannuli had found.  AR 453.  As such, it is unclear how the ALJ's error in

10   assessing and weighing Dr. Giannuli's opinion, if any, was not harmless to the RFC

11   determination nor, more generally, to the ALJ's decision that plaintiff was not disabled.  *See*

12   *Gonzalez v. Kijakazi*, No. 1:21-CV-01676-SKO, 2023 WL 6164086, at *7 (E.D. Cal. Sept. 21,

13   2023) ("plaintiff can hardly fault the ALJ for giving him the benefit of the doubt and assessing an

14   RFC that is more favorable to plaintiff than most of the medical opinions in the record"); *Mills v.*

15   *Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22,

16   2014) (same).  Plaintiff makes no argument to explain how, had the ALJ hewn strictly to only

17   those limitations identified by Dr. Giannuli, the ALJ's determinations would have been different

18   and more favorable to plaintiff.  *See Shinseki*, 556 U.S. at 409; *Stout*, 454 F.3d at 1055-56; *see*

19   *generally Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

20       Plaintiff appears to argue that, even if the ALJ's analysis of Dr. Giannuli's opinion was

21   not error, the ALJ erred insofar as he found certain other medical sources' opinions not

22   persuasive because they were inconsistent with Dr. Giannuli's opinion, or persuasive because

23   they were consistent with Dr. Giannuli's opinion.  *See* ECF No. 12 at 15, 17, 18.  Plaintiff

24   suggests that this would reflect an untenable analytical approach, given that the ALJ had also

25   found not persuasive Dr. Giannuli's clinical opinions that plaintiff was only mildly impaired in

26   certain realms.  *Ibid.*  This argument has no purchase.  In analyzing the consistency factors for the

27   medical opinions of Drs. Brode and Zukowsky, the ALJ considered the opinions' consistency

28   relative to Dr. Giannuli's clinical observations, not opinions.  *See* AR 452.  In analyzing the

consistency factors for the medical opinions of Ms. Paoli, Dr. Smith, and Ms. Anglim, the ALJ considered their consistency relative to Dr. Giannuli's observations and opinions, AR 453-54, but this presents no untenable logical inconsistency.  The ALJ found credible Dr. Giannuli's opinion that plaintiff had a mentally medically determinable impairment, but found not credible his opinion that the impairment was only mild; in contrast, Ms. Paoli, Dr. Smith, and Ms. Anglim all found much greater levels of impairment, which the ALJ also found unpersuasive under both the supportability and consistency factors, considering, for the latter, numerous of items of evidence in the record in addition to Dr. Giannuli's opinions.  *See* AR 453-54.  Based on all of these items of evidence, as well as the supportability factors for each opinion, he ultimately concluded that plaintiff's limitations appeared to be more incapacitating than Dr. Giannuli's "mild" descriptor, but less incapacitating than the levels of impairment Ms. Paoli, Dr. Smith, and Ms. Anglim had indicated.  There was no error in this nuanced approach to reconciling the disparate medical opinion evidence before him, *see generally Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042; *Benton*, 331 F.3d at 1040, and his conclusions about the persuasiveness of the medical opinions before him and, more generally, his RFC determination are supported by the totality of the evidence before the agency on this issue.  *See Hill,* 698 F.3d at 1159.

For all of these reasons, therefore, plaintiff fails to show that the ALJ's decision should be vacated due to errors in assessing Dr. Giannuli's medical opinion.

**c.  Linda Paoli**

Plaintiff next claims error in the ALJ's assessment of and findings relative to the opinion of Linda Paoli, LCSW.  ECF No. 12 at 15-16.  Ms. Paoli authored a letter, dated June 14, 2017, in which she stated that she had treated plaintiff intermittently from September 2003 to August 2013, during which time he attended group therapy sessions and individual therapy sessions, and she described briefly her knowledge of plaintiff's psychiatric functioning during that time.  AR 301-02.  Her letter concluded with the following clinical opinion: "I think that Mark would have great difficulty getting and keeping a job. His paranoia would lead to anger outbursts with co-workers and/or customers. His difficulty with authority figures would similarly impede his keeping a job." AR 302.

1    In its decision reversing the district court's affirmance of the agency's denial of disability

2    benefits, the Court of Appeals ordered the matter be remanded so that the ALJ could determine

3    whether Ms. Paoli's letter constituted a medical opinion and, if so, analyze it pursuant to the

4    factors set forth in 20 C.F.R. § 404.1520c(c)(l)-(5).  AR 495-98.  On remand, the ALJ concluded

5    that Ms. Paoli's letter constituted a medical opinion.  AR 451-52.  He then concluded that Ms.

6    Paoli's opinion about the extent and nature of plaintiff's impairments was not credible, finding:

7
8
9
10
11
12
13
14

> Such opinion is vague with respect to the claimant's maximum functional abilities (Ex. 1F). Further, such opinion is supported by minimal treatment records (Ex. 1F/4), while the undersigned notes that within the narrative Ms. Paoli indicated that much of her treatment was prior to the alleged onset date, while an intern evaluated the claimant in June 2012 without associated treatment notes (Ex. 1F/2; Medical Evidence). Ms. Paoli's opinion is also not wholly supported by the narrative, which indicates that the claimant appeared to do better with medication treatment (Ex. 1F/2). Ms. Paoli's opinion is also inconsistent with the examination and opinion provided by Dr. Giannuli (Ex. 2F). Further, Ms. Paoli's opinion is inconsistent with the claimant's cooperative presentation to Dr. Schwartz (Ex. 3F). Ms. Paoli's opinion is inconsistent with the claimant's treatment in late 2017 and early 2018, which show improvements in his symptoms (Exs. 5F/4; 6F/2-3; 13F/19). Additionally, Ms. Paoli's opinion is inconsistent with the claimant's own reporting of frequent grocery shopping and attending group meetings (Exs. 3E/7-8), as well as travel to Florida (Ex. 6F/5).

15   AR 453.

16   The ALJ's analysis of and his reasons for rejecting Ms. Paoli's clinical opinion were

17   reasonable and had substantial evidence supporting them.  Consistent with the regulations and the

18   Court of Appeals' remand order, the ALJ considered the supportability and consistency of her

19   opinion in evaluating it.  *See Woods*, 32 F.4th at 791-92; 20 C.F.R. § 404.1520c(c)(1).  The record

20   supports the ALJ's finding that Ms. Paoli's opinion was unsupported in its description of plaintiff

21   as extremely impaired in his ability to interact with others successfully, as it failed to account for

22   Ms. Paoli's own recollection that "[a]nti-depressants [had] helped" plaintiff in his functioning, as

23   she had attributed his "angry outbursts," suicidality, lack of energy and motivation, and

24   addictions to his depressive disorder.  AR 302.  It was also appropriate for the ALJ to observe that

25   Ms. Paoli's opinion was supported by extremely minimal contemporaneous treatment records,

26   including none by Ms. Paoli from the period of 2003 to 2013, which was the period she had

27   identified as encompassing her treatment of plaintiff.  *See* AR 301-04; *see, e.g., Fidel R.P. v.*

28

1  *O'Malley*, 754 F. Supp. 3d 986, 992 (N.D. Cal. 2024) (analyzing supportability factor in terms of,

2  inter alia, whether it was supported by the opinion writer's own treatment records or notes).  It

3  was also appropriate under the regulations for the ALJ to observe that, to the extent Ms. Paoli

4  based her clinical opinion on plaintiff's functioning while participating in therapy with another

5  clinician, there were no notes or records from that clinician that tended to support Ms. Paoli's

6  descriptions and conclusions about plaintiff's functioning.  *See* AR 301-02.  Because the

7  regulations instruct that "[t]he more relevant the objective medical evidence and supporting

8  explanations presented by a medical source are to support his or her medical opinion(s) . . ., the

9  more persuasive the medical opinions . . . will be," 20 C.F.R. § 404.1520c(c)(1), the ALJ

10 committed no legal error in concluding that, based on the record before the agency, there was

11 little objective medical evidence in support of Ms. Paoli's clinical opinion, thus rendering it

12 minimally supported within the meaning of the regulations.

13      The ALJ's conclusion that Ms. Paoli's opinion was inconsistent with other evidence was

14 also reasonable and supported by substantial evidence in the record.  *See Woods*, 32 F.4th at 791-

15 92; 20 C.F.R. § 404.1520c(c)(2).  The ALJ found that Ms. Paoli's conclusion that plaintiff would

16 have great difficulty maintaining employment due to his unrestrained angry outbursts resultant

17 from paranoia was inconsistent with the clinical observations and opinion of Dr. Giannuli in

18 2017, those of Dr. Schwartz in 2017, and plaintiff's treatment records from 2017 and early 2018

19 that showed an improvement in his symptoms.  AR 453.   The record supports the ALJ's

20 interpretation.  In contradiction of Ms. Paoli's conclusions, Dr. Giannuli found plaintiff to have

21 been "polite and cooperative" during his clinical examination of plaintiff, consistent with

22 plaintiff's own reports that he experienced less internal agitation and conflictual interactions with

23 others since taking Cymbalta, a SNRI.  AR 309.  As the ALJ observed, Ms. Paoli's conclusion

24 was also contradicted by Dr. Schwartz's report that, in his clinical examination of plaintiff in

25 2017, he found plaintiff to be "pleasant and cooperative," AR 315, and by plaintiff's treatment

26 records indicating that, during the relevant period, plaintiff showed improvements in his internal

27 emotional regulation, coping skills, and management of his anger, while taking his prescribed

28 Cymbalta.  AR 325; *see also* AR 356-57, 828-29.  It was reasonable for the ALJ to consider Ms.

1  Paoli's opinions less persuasive to the extent they were contradicted by the reported observations

2  of other clinicians.  *See generally* 20 C.F.R. § 404.1520c(c)(2).   It was also reasonable for the

3  ALJ to discount Ms. Paoli's opinion given that it appeared to fail to account for plaintiff's

4  reported and observed history of successful management of his emotional lability with

5  medication.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

6  ("Impairments that can be controlled effectively with medication are not disabling for the purpose

7  of determining eligibility for SSI benefits.").

8          Finally, the ALJ discounted Ms. Paoli's opinion because it was inconsistent with

9  plaintiff's reports of successful management of the tasks of regular grocery shopping and

10  Alcoholics Anonymous meeting attendance, as well as travel.  AR 453 (citing AR 203, 359).  It

11  was reasonable for the ALJ to discount a medical opinion because it is contradicted by the

12  claimant's reports of his own functioning.  *See, e.g.*, *Mitchell v. Kijakazi*, No. 21-35647, 2022

13  WL 17547806, at *1 (9th Cir. Dec. 9, 2022) (holding that substantial evidence supported the

14  ALJ's decisions where the ALJ evaluated medical opinions' "consistency and supportability

15  against other evidence in the record, including. . . [the plaintiff's] contrasting reported activities");

16  *Thompson v. Kijakazi*, No. 1:22-CV-00364-BAM, 2023 WL 3224442, at *10 (E.D. Cal. May 3,

17  2023) (holding ALJ reasonably discounted medical opinions of the limits of a claimant's

18  functioning, when those limits were inconsistent with evidence of the claimant "attending and/or

19  chairing multiple AA meetings per week, spending time with friends, doing volunteer work,

20  researching and expressing interest in a position as Mental Health Ambassador for Tuolumne

21  County, and creating and selling artwork"); *Leonard v. Comm'r of Soc. Sec.*, No. 1:21-cv-00627-

22  EPG, 2022 WL 4123990, at *4 (E.D. Cal. Sept. 9, 2022) ("when considered in conjunction with

23  the rest of the ALJ's reasoning, the ALJ's reliance on Plaintiff's daily activities—caring for her

24  cat, preparing simple meals, cleaning, and sometimes administering her father's insulin, etc.—is a

25  reasonable basis to discount the severe limitations assessed [in a medical opinion]").  Here, there

26  was substantial evidence for the ALJ's determination that Ms. Paoli's opinion was inconsistent

27  with plaintiff's reports about his functioning, including specific activities he had reported to have

28  undertaken successfully, and to conclude that on this basis the consistency factor weighed against

1  Ms. Paoli's opinion.

2        Plaintiff argues that the ALJ's discounting of Ms. Paoli's opinion—that plaintiff "would

3  have great difficulty getting and keeping a job" due to inevitable "anger outbursts with co-

4  workers and/or customers" and "difficulty with authority figures"—was unreasonable because her

5  opinion had accounted for the evidence that the ALJ found contradictory.  ECF No. 12 at 15-16.

6  In other words, plaintiff argues that the ALJ should have understood Ms. Paoli's opinion to have

7  encompassed the successes in emotional management that Drs. Giannuli and Schwartz reported

8  having observed and plaintiff reported having experienced, and that her opinion was reliable

9  because it accounted for these subtleties.  *Ibid*.  Ms. Paoli's opinion, however, does not make this

10  assertion, and only obliquely suggests it through imprecise, vague discussions of plaintiff's

11  functioning during the time she treated him.  *See* AR 301-02 (plaintiff's "interpersonal skills were

12  frequently getting him into trouble. These 'skills' were a result of depression and Post Traumatic

13  Stress Disorder. The union came to his defense and he did not lose his job but sometimes was

14  suspended"); *ibid*. (plaintiff's "gains were very slow and he often had setbacks").  Although it is

15  possible that Ms. Paoli's clinical opinion intended to account for the successes the ALJ identified

16  plaintiff to have demonstrated in his emotional and behavioral management, the ALJ was

17  reasonable in failing to adopt that interpretation given the actual text of Ms. Paoli's opinion and in

18  concluding, instead, that Ms. Paoli's perception of plaintiff as highly unable to function with the

19  interpersonal demands of a work environment was belied by other medical and non-medical

20  evidence.  *See Ford*, 950 F.3d at 1154 (if the evidence "is susceptible to more than one rational

21  interpretation, it is the ALJ's conclusion that must be upheld").  The ALJ's reasons for finding

22  Ms. Paoli's opinions inconsistent with other evidence and therefore not persuasive were

23  supported by substantial evidence in the record before the agency, and thus deserve deference.

24  *See generally* 20 C.F.R. § 404.1520c(c)(2)).

25        **d.   Dr. Michael Smith**

26        Plaintiff next argues error in the ALJ's finding that the clinical opinion of Dr. Michael

27  Smith was not persuasive as it related to plaintiff's mental health functioning.  ECF No. 12 at 16-

28  17.  In a form completed April 4, 2018, Dr. Smith opined, inter alia, that plaintiff's depression

1  and PTSD would interfere with his ability to retain employment if employed and would likely

2  cause him to miss work more than four days per month.  AR 319-20.  The ALJ found these

3  opinions not persuasive because under the supportability and consistency factors.  AR 453.  That

4  determination is supported by substantial evidence in the record before the agency.

5        There was substantial evidence for the ALJ's finding that Dr. Smith's opinions were

6  minimally supported.  Dr. Smith's opinion was supported by only a brief narrative, which

7  consisted of no "objective medical evidence and supporting explanations," 20 C.F.R. §

8  404.1520c(c)(1), to justify the limitations he identified.  *See* AR 319-21.  The ALJ also accurately

9  described that Dr. Smith's treatment notes failed to support the limitations contained in his

10  opinion, as his notes memorialized plaintiff's reports of good overall functioning, AR 356-57,

11  360; his recent successful trip to visit his mother, AR 359; and that his prescribed Cymbalta was

12  working effectively in helping him self-regulate, AR 361-63, and failed to contain any evidence

13  indicating that plaintiff could not retain employment if employed or would likely miss four or

14  more days of work per month due to his psychiatric impairments.  *See* AR 356-63.  For these

15  reasons, substantial evidence supports the ALJ's determination that Dr. Smith's opinions were

16  minimally supported within the meaning of 20 C.F.R. § 404.1520c(c)(1).

17        There was also substantial evidence for the ALJ's finding that Dr. Smith's opinions about

18  the limitations engendered by plaintiff's psychiatric impairments were inconsistent with other

19  evidence in the record and, thus, not persuasive for this reason.  *See* AR 453-54.  The ALJ

20  observed that the restrictions contained in Dr. Smith's opinion were inconsistent with the

21  observations and opinions of Dr. Giannuli, with plaintiff's treatment records showing

22  improvement in his symptoms, and with plaintiff's own reports of his functional abilities.  *Ibid*.

23  The ALJ's depiction of the record on these points was accurate, *see* AR 203, 307, 310-11, 323-53,

24  359, 404, 812-1010, 1012-1185, AR 203, and, as described above, these are reasonable bases for

25  an ALJ finding inconsistency in a particular medical opinion.  *See Woods*, 32 F.4th at 794; *see,*

26  *e.g.*, *Mitchell*, No. 21-35647, 2022 WL 17547806, at *1; *Thompson*, No. 1:22-CV-00364-BAM,

27  2023 WL 3224442, at *10; *Leonard*, No. 1:21-cv-00627-EPG, 2022 WL 4123990, at *4.

28  Plaintiff has not shown that the ALJ's finding on the persuasiveness of Dr. Smith's opinions of

1  plaintiff's psychiatric limitations lacked substantial evidence. *See Thomas*, 278 F.3d at 954.

2          **e.  Amy Anglim and Elizabeth Mattreoni**

3          Plaintiff next argues that the ALJ erred in finding unpersuasive the opinions of Ms.

4  Anglim.  ECF No. 12 at 17-18.  The record does not corroborate plaintiff's argument.

5          In a letter dated June 19, 2018, Amy Anglim, AMFT, supervised by Elizabeth Mattreoni,

6  LMFT, briefly described her knowledge of plaintiff's functioning and opined that his

7  "psychological and emotionally (sic) functioning are impaired due to his mental health issues."

8  AR 433.  She described that she had provided plaintiff with weekly individual therapy for the

9  previous five weeks and indicated that he had been diagnosed with Major Depressive Disorder

10  and met the criteria for PTSD.  *Ibid*.  She stated that plaintiff demonstrated symptoms of "feeling

11  sad much of the time, lack of pleasure, self-blaming, feelings of guilt, suicidal ideation, low

12  energy and disruption in appetite and sleep," reportedly throughout much of his adult life but

13  "recently" those symptoms had "worsened."  *Ibid*.  She also stated that plaintiff exhibits "anxiety,

14  fear, startles easily, hyper-vigilance, intrusive memories, nightmares, flashbacks, somatic issues

15  triggered by external cues."  *Ibid*.

16          The ALJ aptly identified that the opinion contained in Ms. Anglim's letter was vague and

17  only provided slight information from which plaintiff's specific RFC could be discerned.  *See* AR

18  454.  The ALJ also did not err in describing Ms. Anglim's letter as minimally supported, as it

19  appeared not to derive from any contemporaneous examination of plaintiff, but rather his

20  description of his complaints to her.  *See* AR 1058; *see generally* 20 C.F.R. § 404.1520c(c)(1)

21  (supportability determined by "objective medical evidence and supporting explanations" to justify

22  the clinical opinion).  The ALJ also did not err in finding that Ms. Anglim's opinion was

23  inconsistent with the clinical observations and opinion of Dr. Giannuli, AR 310-11, and with

24  treatment records memorializing improvement in plaintiff's symptoms.  *See* AR 203, 307, 310-

25  11, 323-53, 359, 404, 812-1010, 1012-1185; *Woods*, 32 F.4th at 794.  Plaintiff has not shown that

26  the ALJ's assessment of Ms. Anglim's opinion lacked substantial evidence in support of it.

27          In sum, the record demonstrates that the ALJ had before him an array of medical opinions

28  offering a gamut of beliefs about plaintiff's psychiatric functioning.  These opinions came from

1   examining and non-examining sources, some more detailed in their opinions and explanations for

2   same than others; of those who had personally examined or treated plaintiff, these sources varied

3   too in the recency of their contact with plaintiff relative to the legally-relevant period of claimed

4   disability.  The ALJ's opinion indicates that he endeavored to reconcile these disparities, as the

5   law requires him to do, *see Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042;

6   *Benton*, 331 F.3d at 1040, and he did so guided by the standards set forth in the governing

7   regulations and the totality of evidence before him.  *See* 20 C.F.R. § 404.1520c.  The record does

8   not substantiate plaintiff's argument that the ALJ cherry-picked portions of the record to support

9   a finding of non-disability.  *See* ECF No. 12 at 14-15 & n.10.  Rather, the record supports the

10  ALJ's finding that, considering all of the medical opinions and clinical observations contained

11  therein, plaintiff's treatment and examination records, and plaintiff's reports of his functioning

12  and activities, certain medical opinions were more persuasive than others.  Plaintiff has not shown

13  that, in this respect, there lacked substantial evidence for the ALJ's RFC determination that, inter

14  alia, plaintiff's psychiatric impairments rendered him able "to perform medium work" and he

15  could "occasionally interact with coworkers and the public."  *See* AR 448.  On this basis,

16  plaintiff's motion fails.

17          **2.  ALJ's Evaluation of Plaintiff's Testimony**

18          Plaintiff next claims error in the RFC to the extent the ALJ did not find credible certain of

19  plaintiff's claims about the extent and nature of his limitations.  ECF No. 12 at 19-20.

20  Specifically, plaintiff argues that in determining his RFC, the ALJ unreasonably discounted

21  plaintiff's claims of memory difficulties, difficulties in focusing, and difficulties interacting with

22  others.  *See ibid*.  Substantial evidence supports the ALJ's determination.

23          When determining a plaintiff's residual functioning capacity, the ALJ must consider the

24  plaintiff's testimony describing their symptoms and engage in a two-step inquiry to determine

25  whether such testimony is credible.  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

26  "First, the ALJ must determine whether the claimant has presented objective medical evidence of

27  an underlying impairment 'which could reasonably be expected to produce the pain or other

28  symptoms alleged.'" *Lingenfelter,* 504 F.3d at 1035-36 (quoting *Bunnell v. Sullivan,* 947 F.2d

1    341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)).  If the claimant satisfies

2    the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the

3    claimant's testimony about the severity of her symptoms only by offering specific, clear and

4    convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater,* 80

5    F.3d 1273, 1281 (9th Cir. 1996)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th

6    Cir. 2006).

7            Here, the record indicates that, in his June 2017 Function Report, plaintiff reported that he

8    could not focus on tasks for more than thirty-minute intervals, experienced short-term memory

9    loss, experienced periods of "spac[ing] out" and feeling confused and bewildered, and required

10   repeated instructions from coworkers.  AR 200.  In 2024 answers to interrogatories, plaintiff

11   testified that in approximately 2011 he made threats to a coworker during a dispute and, in the ten

12   years prior to that, had angry outbursts at coworkers and supervisors.  AR 777.  Plaintiff also

13   testified in 2024 that, since 2012, he could not be around three or more people for more than one

14   hour at a time without becoming overwhelmed, lived alone due to anxiety and panic attacks, and

15   had minimal contacts with others.  AR 781.

16           In his assessment of plaintiff's RFC, the ALJ discounted plaintiff's descriptions, finding:
     Although the claimant endorsed memory difficulties, Dr. Giannuli noted that the
     claimant was able to repeat five digits forward and four digits backward, while he

17   recalled two of three words after a five-minute delay (Ex. 2F/5). At an evaluation
     on February 14, 2018, the claimant's short- and long-term memories were intact

18   (Ex. 13F/58). While the claimant indicated a history of interpersonal conflicts at
     work prior to the alleged onset date (Ex. 26E), testified that there were periods

19   when he would not leave his house, and noted that he lived alone due to
     interaction difficulties and had no visitors unless there was an emergency or

20   outpatient surgery that required a pick up or drop off (Ex. 26E/7), the record does
     not show that he was as limited as alleged. The claimant shopped in stores up to

21   six times per week without notations of interaction difficulties (Ex. 3E/7). He
     went to dinner with friends once per month, attended twelve step meetings

22   regularly, and attended church once per month (Ex. 3E/8). He tried to attend
     various twelve step meetings seven days per week (Ex. 26E/6). Dr. Giannuli

23   observed that the claimant was very polite and engaging (Ex. 2F/3). The claimant
     presented as pleasant and cooperative at the internal medicine consultative

24   examination (Ex. 3F/4). On January 11, 2018, the claimant reported that he had a
     good trip to Florida to visit his mother without indicating interaction difficulties to

25   the degree alleged (Ex. 6F/5). Although the claimant endorsed a history of being
     unable to maintain focus, Dr. Giannuli indicated that the claimant could add and

26   calculate multiple one- or two-digit numbers and solve money word problems in
     his head (Ex. 2F/5). Dr. Giannuli noted that the claimant was engaged and able to

27   spell world forwards and backwards (Ex. 2F/6). The claimant drove himself to the
     internal medicine consultative examination without endorsements of difficulties

28   with such task (Ex. 3F/3). He continues to drive without endorsements of

psychiatric limitations with such task.

AR 450-51.  As noted, the ALJ ultimately determined that plaintiff's RFC encompassed a

capacity to "understand, remember, and carry out simple, routine, and repetitive tasks

using judgment limited to simple work-related decisions" and "occasionally interact with

coworkers and the public."  AR 448.

There was no error in the analysis or conclusions of the ALJ concerning plaintiff's ability

to focus, remember, and engage with others.  The reasons that the ALJ provided for rejecting

plaintiff's representations of the intensity, persistence, and limiting effects of his symptoms were

"specific, clear and convincing," *Garrison*, 759 F.3d at 1014-15, as the ALJ identified

contemporaneous evidence of plaintiff's treatment history that contradicted plaintiff's claims

describing his impairments.  *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012)

(holding ALJ was reasonable in relying on objective medical evidence of claimant's functioning

over claimant's subjective testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1161 (9th Cir. 2008) (holding ALJ reasonably relied on physician's assessment of claimant's

lifting capability in lieu of claimant's self-report, as "[c]ontradiction with the medical record is a

sufficient basis for rejecting the claimant's subjective testimony"); *Osenbrock v. Apfel*, 240 F.3d

1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of claimant's allegations of disabling

pain, as they conflicted with records from her physical examinations).  Here, the ALJ was

reasonable in relying on clinicians' assessments of plaintiff's memory and mental acuity over

plaintiff's representations, and the ALJ's depictions of the record in this regard was accurate.  *See*

AR 309-10, 314-15, 867.  The ALJ was also reasonable in partially discrediting plaintiff's

interrogatory descriptions of his impairments in anger regulation, getting along with others, and

managing his anxiety in social situations, in light of other data, namely, contemporaneous

treatment and examination records, which memorialized greater levels of functioning, and

plaintiff's more specific testimony identifying particular tasks he regularly undertook.  *See* AR

203-04, 307, 315, 359; *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (holding ALJ

reasonably discounted claimant's testimony concerning the alleged severity of her limitations

where that testimony was inconsistent with evidence of claimant's daily activities); *Lingenfelter*,

1    504 F.3d at 1040 (the ALJ may consider "whether the claimant engages in daily activities

2    inconsistent with the alleged symptoms" in determining whether claimant's claims are credible).

3    Plaintiff has not shown that the RFC lacks substantial evidence to support it in this regard.

### 3. ALJ's Evaluation of Plaintiff's Third-Party Evidence

5        Finally, plaintiff argues that the ALJ unreasonably found partially unpersuasive the

6    opinions of the third-party function report authored by Kelli Hoppe. ECF No. 12 at 20. Plaintiff

7    has not met his burden to show that the RFC lacks substantial evidence in this regard.

8        Ms. Hoppe, a friend of plaintiff's, submitted a Third-Party Function Report dated June 20,

9    2017, in which she stated that plaintiff's psychiatric impairments limited his ability to work by

10   causing loss of memory and concentration, isolation, poor planning, fatigue, frustration, and

11   quickness to anger. AR 243. She described that he had trouble remembering commitments and

12   appointments and was forgetful about his finances. AR 244-47. She reported that he had trouble

13   getting along with others because he "avoid[s] conflicts" and gets angry with authority and with

14   changes in his routine. AR 248-49. She also reported that he appeared "calmer" from taking

15   Cymbalta and had slowly improved in the thirteen years she had known him. AR 243, 250.

16       In assessing plaintiff's RFC, the ALJ credited Ms. Hoppe's report insofar as it conveyed

17   that plaintiff has severe psychiatric impairments. AR 451. Nonetheless, the ALJ found that

18   plaintiff's impairments were not as limiting as Ms. Hoppe described. *Ibid*. The ALJ discounted

19   Ms. Hoppe's opinion about plaintiff's memory impairments to the extent it conflicted with the

20   results of mental status examinations performed by clinicians. AR 451 (citing AR 309, 867). The

21   ALJ also discounted Ms. Hoppe's opinion about the extent of plaintiff's ability to interact with

22   others, as inconsistent with plaintiff's reports about his daily functioning and his presentation

23   during consultative examinations. AR 451 (citing AR 203-04, 305-18).

24       Substantial evidence supports the ALJ's conclusions about the weight and persuasiveness

25   of Ms. Hoppe's opinion. The ALJ was accurate in his depictions of the instances where clinical

26   reports, treatment and examination notes, and the plaintiff's own reports and testimony

27   contradicted the broad-brush descriptions provided by Ms. Hoppe. *See* AR 203-04, 305-18, 867.

28   As observed above, these are lawful bases on which the factfinder may find a claimant's own

testimony not credible, *see, e.g.*, *Smartt*, 53 F.4th at 499; *Lingenfelter,* 504 F.3d at 1040, and thus

they provide a germane, reasonable basis for the ALJ to reject third-party evidence, as well.  *See*

*generally Molina v. Astrue*, 674 F.3d 1104, 1114-15 (9th Cir. 2012) (superseded by statute on

other grounds).[8]  For these reasons, plaintiff has failed to show that the ALJ's RFC determination,

and ultimately the finding of non-disability, lacked substantial evidence to support it.

## V.    Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2.  Defendant's cross-motion for summary judgment (ECF No. 16) is granted;

3.  The Clerk of the Court shall enter judgment for defendant and close this case.

Dated: September 17, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff argues that under the new regulations, the ALJ must provide "specific, clear, and convincing" reasons to reject the opinions of a claimant's functioning offered by a third party.  ECF No. 12 at 20.  Plaintiff cites no law for this proposition and it would appear at odds with the new regulations' provision that the ALJ need not articulate how it considered evidence from nonmedical sources.  *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d); *Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *2 (9th Cir. Jan. 23, 2024); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).  Should the Court of Appeals conclude that the ALJ was required to have provided specific, clear, and convincing reasons to partially reject Ms. Hoppe's statements, the court concludes that the ALJ's reasoning provided met this standard.  *See Chaudhry*, 688 F.3d at 672-73; *Carmickle.*, 533 F.3d at 1161; *Osenbrock*, 240 F.3d at 1165-66.